UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AIMEE HICKS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 3:23-CV-1294-X |
| § | |
| HARTMAN INCOME REIT, INC., et al., § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO ARBITRATE**

Pending before the Court is Defendants Hartman Income Reit, Inc.'s, ("Hartman Income") and Silver Star Property Management, Inc. f/k/a Hartman Income Reit Management Inc.'s ("Silver Star Property") motion to compel arbitration. (Doc. 11). After reviewing the motion, response, and applicable law, the Court **GRANTS** the motion. (Doc. 11). As a result of granting Defendants' motion, the Court **STAYS** and **ADMINISTRATIVELY CLOSES** this case pending the filing of a motion regarding the arbitration award.

**I. Background**

This is a wrongful termination suit under Title VII. In January 2022, Plaintiff Aimee Hicks interviewed with Hartman Income and Silver Star Property for a position within one of Defendants' companies, specifically Senior Property Manager

1

of the Dallas Market.[1] Hicks alleges that, during her interview, the Defendants' CEO asked about her religious beliefs.[2] Hicks responded that she grew up Baptist but did not still regularly attend church.[3] Hicks alleges that the CEO encouraged Hicks to attend church, and further, that he could recommend some churches in the area were she to accept the Senior Property Manager Position.[4] Hicks was hired, despite her own self-described, expressed worry that her experience was in residual property and not commercial property.[5]

Sometime soon after starting her new job as Senior Property Manager, Hicks met with Defendants' COO, Angel Gonzales.[6] Gonzales allegedly told Hicks that "she did not display the Biblical qualities of a servant leader" and told her that she should review the Bible's depiction of women being "humble" and "servant leaders."[7] In a later conversation, Gonzales allegedly asked Hicks why she had not and was not attending the women's Bible study group, comprised of female employees of Defendants' company.[8]

---

[1] Doc. 1 at 2.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 3.
[7] *Id.*
[8] *Id.*

After a little over a month of employment, Gonzales offered to demote Hicks to an administrative position.[9] Hicks declined.[10] Gonzales then terminated Hicks for allegedly "not being a servant leader."[11]

Hicks now brings a two-count suit in this Court, arguing that she was unlawfully fired for her religious beliefs and/or on account of her sex.[12]

## II.  Analysis

Defendants have filed a motion to compel arbitration. Whether this Court should subject Hicks to a trial by arbitration is the only ripe issue in this memorandum opinion and order.

### a. Motion to Compel Arbitration

Defendants argue that the "Mutual Agreement to Arbitrate Acknowledgement" binds Hicks's claims to a trial by arbitration. In the Fifth Circuit, "[c]ourts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute."[13] "The first is contract formation—whether the parties entered into *any arbitration agreement at all*."[14] "The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."[15] This implicates mainly the first question: contract formation.

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 3–4.

[13] *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

[14] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

[15] *Id.*

3

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court."[16] Under Texas law, there is "no presumption in favor of arbitration when determining whether a valid arbitration agreement exists."[17] "Instead, the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements."[18]

In Texas, a to prove the existence of a binding contract, a plaintiff must establish that:

> (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.[19]

Here, Hicks advances two arguments that there was no arbitration agreement. First, Hicks argues that because this arbitration agreement lacks her signature, there has been no contract formation.[20] While the agreement does lack Hicks's signature as a factual matter, the Parties properly formed a contract under Texas law. In Texas "a signature is not required to bind the parties to a contract unless the parties intended to require a signature."[21] And here, the Mutual Agreement to Arbitrate Acknowledgement does not have signs of requiring a signature, such as a

---

[16] *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

[17] *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

[18] *Id.*

[19] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018).

[20] Doc. 12 at 2.

[21] *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021) (citing *Huckaba*, 892 F.3d at 689 (applying Texas law)).

4

signature block or language expressing that a signature is required to consummate the contract.[22] Therefore, because this arbitration agreement does not have signs of requiring a signature to be binding, Hicks's signature is not needed for this arbitration agreement to be binding and enforceable.

Hicks's second objection likewise fails. She argues that "Defendants have not provided any proof that Plaintiff received the unsigned arbitration agreement."[23] In Texas, an arbitration agreement lacking a signature can be enforceable and binding where (1) an employer "provide[s] notice of the agreement; and (2) the employee accept[s] the agreement by continuing to work after receiving the notice."[24]

Here, Defendants state that this arbitration agreement is a company-wide policy.[25] Specifically, this agreement is part of the hiring package new employees sign.[26] Defendants also state that this new employee hiring package was in effect when they hired Hicks on January 19, 2022.[27] As a new employee, Hicks signed one of the papers found in the new hire package. This arbitration agreement, whether or not it was *physically* included in the new employee package, was a company-wide policy that Hicks had notice of. Further, the "Receipt of SPD" paper that Hicks

---

[22] Yet "Texas courts have held that a signature block by itself is insufficient to establish the parties' intent to require signatures." *Huckaba*, 892 F.3d at 689. So while a signature block does not indicate that a signature is required to form a contract, the *lack* of a signature block is telling.

[23] Doc. 12 at 2.

[24] *Huckaba*, 892 F.3d at 690 (citing *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding)).

[25] Doc. 11 at 1.

[26] *Id.*

[27] *Id.*

unquestionably signed includes a statement that there is a "mandatory company policy requiring that certain claims" be "submitted to an arbitrator" and that continued employment constitutes an "accept[ance] and agree[ment] to comply with these arbitration requirements."[28] And Hicks agreed to this policy by agreeing to be hired and by continued employment thereafter.

Now that the (harder) formation question has been answered, the Court can move to the second step in the arbitration-agreement analysis: whether Hicks's claims fall under the scope of the arbitration agreement. They do. In fact, the Mutual Agreement to Arbitrate Acknowledgement's scope is nearly infinitely broad, encompassing "all claims that Company or Claimant may have which arise from Claimant's employment or termination of employment with Company, including but not limited to . . . claims for employment discrimination . . . and retaliation under Title VII."[29] Plainly stated, Hicks's Title VII discrimination claims fall under this scope.

### III. Conclusion

Accordingly, the Court **GRANTS** the Defendants' Motion to Compel Arbitration. (Doc. 11). As a result of granting Defendants' motion, the Court **STAYS**

---

[28] Doc. 11-1 at 1. Sure, the Court understands that the arbitration agreement found in the "Receipt of SPD" is quite different than the arbitration agreement found in the Mutual Agreement to Arbitrate Acknowledgement. The SPD's arbitration agreement mandates arbitration for only on-the-job injuries. *See id.* But the SPD also points Hicks and other new employees towards the separate, all-encompassing Mutual Agreement to Arbitrate Acknowledgement. *See id.* For example, the SPD identifies Hartman Income as "the Company or any entity or person listed on Schedule A or defined as Company *in the arbitration agreement.*" *Id.* (emphasis added). Thus, the SPD, by pointing to the separate "arbitration agreement," provided notice to Hicks of the Mutual Agreement to Arbitrate Acknowledgement. *Id.*

[29] *Id.* at 3.

and **ADMINISTRATIVELY CLOSES** this case pending the filing of a motion regarding the arbitration award.

    **IT IS SO ORDERED** this 4th day of December, 2023.

                                                  _____
                                                  BRANTLEY STARR
                                                  UNITED STATES DISTRICT JUDGE